# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **KELVIN A. CANADA,** | )<br>) |
| Plaintiff, | ) Case No. 7:16CV00190<br>) |
| v. | ) **OPINION**<br>) |
| **CHRISTOPHER GILBERT, ET AL.,** | ) By: James P. Jones<br>) United States District Judge |
| Defendants. | ) |

*Kelvin A. Canada, Pro Se Plaintiff.*

The plaintiff, Kelvin A. Canada, an inmate proceeding pro se, filed this prisoner civil rights action under 42 U.S.C. § 1983. Canada alleges that Virginia prison officials misused body cavity searches and strip cell conditions and destroyed his personal property items in retaliation for a petition he wrote to administrators about prison conditions. He has also submitted a Supplemental Complaint alleging imposition of an excessive fine. After review of Canada's submissions, I conclude that this action must be summarily dismissed.

I.

Canada was incarcerated for several years at Red Onion State Prison ("Red Onion") in Pound, Virginia, where the constitutional violations alleged in his

Complaint allegedly arose.[1] He separates his allegations into four claims.

### Denial of Recreation and Showers.

On January 7, 2016, Officers S. Patrick and N. Stephens came to Canada's cell for routine shower procedures that required Canada to place his shower items in the tray box and submit to a visual body cavity search. After Canada did so, Patrick ordered: "Turn around, face the back wall and spread your buttocks open again." (Compl. 7, ECF No. 1.) Canada said, "I've already spread my buttocks once." (*Id.*) Canada claims that Stephens then shut the tray box and denied Canada a shower. When Canada asked why, Stephens allegedly replied, "Because you shouldn't of put my name in your damn Petition."[2] (*Id.* at 8.)

Canada alleges that he complained to Sargent Hall about missing his shower and was told that he had been denied a shower for not spreading his buttocks. Canada allegedly told Hall, "That's a lie, I complied with the strip-search and spread my buttocks. I've been at Red Onion for 17-years on segregation. I know what the (strip search) protocol is." (*Id.* at 9.) Hall allegedly placed Canada on

---

[1] In June 2016, officials transferred Canada to a prison facility in Rhode Island.

[2] Canada submits a copy of a "Supplemental Petition on Abuse in Virginia Prisons" that he allegedly drafted, dated December 1, 2015. (Supp. Pet. 1, ECF No. 14.) Among many other things, this document complains that officers in B3-Pod of Red Onion routinely deny inmates recreation and showers for not following procedures or being disruptive. The document indicates that a prior "Petition," dated August 26, 2013, was sent to Virginia state and federal legislators, the governor, and three Virginia Department of Corrections ("VDOC") administrators, and states Canada's intention to send the supplemental petition to the same individuals. (*Id.* at 22.)

"strip-cell for threatening staff," which Canada denied doing. Canada claims that Hall then said, "In my eyes and ears you did when you wrote that (petition)." (*Id.* at 10.)

Investigator Jesse Wagner interviewed Canada on January 29 about his grievances against officers at Red Onion. Wagner told Canada, "The policy of Red Onion says prisoners must comply with the (strip-search) procedure" in order to leave their cells, and "[i]f an officer tells you to spread your buttocks, and it's not to his approval you must do it again. If you don't comply, you w[on't] come out [of] your cell for (rec) or (shower)." (*Id.* at 14, 15.) Canada claims that Wagner misstated VDOC policy.

Canada also claims that on February 4, he asked Sargent Jordan Fleming why he had denied recreation and showers to Inmates Rivera and Davis. Fleming allegedly stated, "[Y]ou ain't going to (rec) or (shower) either for speaking up for [them] and for writing that petition. . . . As long as I'm taking up the (rec) [and] (shower) list you will never come out [of] that cell for nothing." (*Id.* at 19.)

On February 9, 2016, Officers J. Lovell and J.T. Fleming allegedly denied Canada a shower "for the same typical bogus reason that was used on Jan. 7, 2016." (*Id.* at 20.) Canada alleges that various officers denied him showers or recreation in this manner on February 12, 13, 23, and 28, and March 12, 2016.

-3-

Each time, the officer(s) allegedly cited Canada's failure to comply with some procedure.

Canada contends that officers retaliated against him using false accusations of failure to comply with search procedures to deny him showers and recreation. He also claims that the strip search procedures at Red Onion were dehumanizing and degrading, in violation of the Fourth Amendment.

### Retaliatory Placement in Strip Cell.

In his complaint, Canada also alleges that on January 7, 2016, Sargent Hall placed Canada on strip cell for eight and a half hours "with nothing but a pair of 'boxers' on," after accusing him of stating, "I'm going to fuck your staff up." (*Id.* at 31.) Canada allegedly denies making any such threat. While on strip cell, Canada was denied sheets, blankets, a mattress, soap, toilet paper, socks, and toothpaste, and could not wash his hands before eating his lunch. He alleges that he had to exercise to keep warm.

Canada contends that Hall placed him on strip cell to retaliate against him for writing the petition. Canada also argues that strip cell was cruel and unusual punishment for a minor infraction, such as a verbal threat, and that Hall's actions denied him due process and violated VDOC policy.

Retaliatory Destruction of Property.

Canada alleges that on February 9, 2016, an officer refused him a shower, stating that he had not complied with strip search procedures. Canada complained, and Sargent Hall allegedly placed him on strip cell "for no reason." (*Id.* at 38.) In frustration, Canada threw feces at the officers, who then placed him in restraints in a nearby cell. Canada insists that when he left his cell, his personal property was packed up in bags on his bottom bunk. When he was released from ambulatory restraints, however, the property inventory sheet indicated that "2 bags of Canada's property had feces at the bottom of them and had to be red-bagged in a 'bio-hazard' bag." (*Id.* at 41.) The items in these bags allegedly included five family photo albums, a battery charger, eight rechargeable batteries, a prayer rug, a pair of Reebok shower shoes, a medical therapy ball, and six books. Canada values the property at $60,878. (*Id.* at 49.)

Canada denies that his property bags could have been exposed to the feces that landed inside his tray box and in front of his cell door. He contends that the officers purposely placed his property on the floor in retaliation so they could falsely claim that it had been contaminated by the feces.

Excessive Fine.

In his Supplemental Complaint (ECF No. 18), Canada asserts that according to video evidence of the February 9, 2016, incident when Canada threw feces at

officers, no feces landed on Officer Tyler Bray; yet Canada was ordered to pay restitution for destroying Bray's state-issued uniform, utility belt, and boots. Canada admits that he soiled two other officers' uniforms, belts, and boots with feces, and that he was properly found guilty of a disciplinary charge related to that conduct. As a result of the disciplinary conviction, the hearing officer ordered Canada to pay $332.00 in restitution for the cost of three officers' clothing items, and Canada has done so.[3] His claim here is that he must be reimbursed $184.00 for the portion of the restitution he paid for Bray's clothing items, because this amount constituted an excessive fine in light of the video footage.

Canada alleges that, in person or in complaint forms, he has communicated the issues in each of his claims to administrative officials, including Defendants Clarke, Robinson, Barksdale, Tate, Hamilton, Gallihar, Gilbert, and Ponton, who have failed to take corrective action.[4] Canada contends that the alleged constitutional violations have caused him emotional distress, mental anguish, insomnia, and anxiety, as well as physical discomforts from the chilled strip cell

---

[3] Canada states that criminal charges brought against him related to the February 9, 2016, incident have been dismissed. The disciplinary hearing officer did not view the video footage, but it was preserved as part of the criminal investigation, and Canada viewed it in that context.

[4] In addition to these administrative officials, Canada names as defendants the following Red Onion officers: J. Lovell, F. Calabro, Sgt. Johnny Hall, and Investigator Jesse Wagner.

and from not having his therapy ball. He seeks compensatory and punitive damages.[5]

II.

A. Standard of Review.

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). An inmate's complaint may be summarily dismissed under this section if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether the complaint states a claim, a court must view the factual allegations in the light most favorable to the plaintiff, but "need not accept as true unwarranted inferences,

---

[5] Canada's Complaint also demanded injunctive relief to end the practice of strip searches and strip cell placement at Red Onion. His claims for injunctive relief were rendered moot by his transfer away from Red Onion, however, and must be summarily dismissed. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (finding prisoner's claims for injunctive and declaratory relief as rendered moot by his transfer). On this ground, I previously denied Canada's separate motion seeking interlocutory injunctive relief.

unreasonable conclusions, or arguments." *Giarrantano*, 521 F.3d at 302 (internal quotations omitted).

## B. Retaliation Claims.

Claims of retaliation by prison inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). Thus, an inmate must present more than conclusory allegations of retaliation. *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). He must allege facts showing that his exercise of a constitutionally protected right was a substantial or motivating factor to the alleged retaliatory action. *Wagner v. Wheeler*, 13 F.3d 86, 90-91 (4th Cir. 1993). Mere "temporal proximity" between the inmate's protected activity and the official's allegedly retaliatory action "is simply too slender a reed on which to rest" a §1983 retaliation claim. *Id.* at 91.

In addition to showing causation, an inmate alleging retaliation must also state facts indicating that "that the conduct complained of adversely affected his constitutional rights." *Daye v. Rubenstein*, 417 F. App'x 317, 319 (4th Cir. 2011) (unpublished) (citing *ACLU v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993)). That a defendant's conduct caused a mere inconvenience is not sufficient to satisfy this element. *Id.*

Canada's Supplemental Petition is essentially a prison grievance. Prisoners do not have a constitutional right of access to a grievance process. *Adams*, 40 F.3d at 75. Thus, Canada's written expression of dissatisfaction about prison conditions did not represent a constitutionally protected activity. Moreover, officers allegedly mentioned Canada's petition in relation to only one incident on January 7, 2016, when he did not receive a scheduled shower. That day, Canada admits talking back to the officers when they asked him to redo a portion of the strip search procedure, and officers cited this noncompliant act as the basis for refusing Canada a shower. Inmates clearly do not have a constitutional right not to comply with prison security procedures and officers' orders related to those procedures. For these reasons, Canada's allegations do not support a finding that his exercise of a constitutional right caused officers to refuse him showers or recreation. Most importantly, even if Canada could prove that his exercise of a constitutional right motivated the officers' actions in refusing him a shower or a recreation period, I conclude that such deprivations are merely an inconvenience and not an adverse action geared to chill Canada's constitutional exercise. Therefore, I will summarily dismiss Canada's first retaliation claim.

Canada also fails to state a retaliation claim concerning the use of strip cell status on January 7, 2016. He alleges that Sargent Hall placed him in such status for threatening staff. Canada also alleges, however, that Hall justified the strip cell

order by stating that Canada was possibly concealing contraband in his cell. This motive for Hall's action, unrelated to the exercise of a constitutional right, is supported by Canada's hesitance to comply with the order to redo the strip search procedure. Because Canada fails to show that Hall's imposition of strip cell status was substantially motivated by any exercise of constitutional rights, I will summarily dismiss Canada's second retaliation claim.

In his third retaliation claim, Canada alleges that officers soiled his property to retaliate against him for throwing feces on February 9, 2016. Canada's conduct on that occasion cannot be characterized as exercise of a constitutionally protected right. Accordingly, I will dismiss this retaliation claim as frivolous.

### C. Fourth Amendment Claim.

As stated, Canada complains that the visual strip search procedure he underwent every time he left his cell at Red Onion was degrading and humiliating, in violation of his Fourth Amendment rights. He contends that during his twenty-three years in prison, he "has never been accused, suspected, or caught ever concealing anything in his 'anal-cavity' so there is no probable-cause or reasonableness for [him] to have been subjected to" the visual body cavity searches at Red Onion. (Compl. 29, ECF No. 1.) I find no merit to this claim.

The Fourth Amendment guards against unreasonable searches and seizures. U.S. Const. amend. IV. While prisoners retain limited Fourth Amendment rights,

their interests must be balanced against the interests of state officials in maintaining safe and secure prisons. *Bell v. Wolfish*, 441 U.S. 520, 557-60 (1979) (rejecting Fourth Amendment claim that prison officials must have probable cause to lawfully require visual body cavity search of detainee after contact visits). It is well established that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 132 S. Ct. 1510, 1517 (2012) (upholding constitutionality of "close visual inspection while undressed" for pretrial detainees, because procedure was reasonably related to legitimate security interest in detecting and deterring possession of contraband in detention facility). Thus, a prison regulation or policy that impinges on an inmate's Fourth Amendment right "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In the Fourth Amendment setting, this reasonableness inquiry considers "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559.

Under this standard, this court has upheld as constitutionally reasonable the Red Onion procedures for visual body cavity searches each time a segregation inmate leaves his cell. *See, e.g., Douglas v. Johnson*, No. 7:11-CV-00468, 2013 WL 1123849, at *7 (W.D. Va. Mar. 18, 2013) (finding procedure reasonable to

prevent high security inmate from possessing contraband) (citing *Rickman v. Avaniti*, 854 F.2d 327 (9th Cir. 1988) (approving strip searches each time a prisoner in administrative segregation left his cell)); *DePaola v. Ray*, No. 7:12CV00139, 2013 WL 4451236, at *11 (W.D. Va. July 22, 2013), *report and recommendation adopted as modified*, No. 7:12-CV-00139, 2013 WL 4453422 (W.D. Va. Aug. 16, 2013) (rejecting Fourth Amendment challenge to Red Onion policy requiring visual body cavity search for inmate to leave or reenter cell). For the reasons stated in *DePaola*, 2013 WL 4451236, at *11-13, I find that the Red Onion visual body cavity search procedure serves a legitimate prison security function, while limiting the degree of intrusiveness on the inmate's privacy. Particularly for a long-term segregation inmate like Canada, who admits to hoarding and throwing feces at multiple officers, any degradation or dehumanization he may feel during a visual cavity search procedure is outweighed by the obvious security interests furthered by that procedure. For the stated reasons, I will summarily dismiss Canada's Fourth Amendment claims.

### D. Eighth Amendment Claim.

Canada claims strip cell status for eight and a half hours constituted cruel and unusual punishment, in violation of the Eighth Amendment, which "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). This claim lacks merit.

"[T]he Constitution does not mandate comfortable prisons," however, and conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981). It is well established that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotation marks and citations omitted). To sustain an unconstitutional conditions claim, a prisoner must show that: (1) objectively, the deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). The prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

Canada does not state facts showing that he suffered any Eighth Amendment violation while temporarily subject to strip cell conditions. Canada alleges a deprivation of his personal property items in his cell. He does not allege that he was deprived of any necessity for life, such as food, shelter, or medical care. He also does not describe any serious mental or physical injury resulting from these

-13-

Case 7:16-cv-00190-JPJ-RSB  Document 19  Filed 10/18/16  Page 13 of 18  Pageid#: 233

challenged conditions.[6]  I will summarily dismiss Canada's Eighth Amendment claim accordingly.

### E.  Deprivation of Property Claim.

Although I have rejected Canada's claims that officers destroyed his property in retaliation for his exercise of constitutional rights, I liberally construe his claim as also asserting the wrongful deprivation of that property without due process.  The claim has no merit, however.

"Because the protections of the Due Process Clause are not triggered by the 'mere failure to take reasonable care,' negligent deprivations are not actionable under § 1983."  *Lovelace v. Lee*, 472 F.3d 174, 202 (4th Cir. 2006) (quoting *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995); *see also Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.").  Thus, to the extent that prison officials' negligent or inadvertent mishandling of

---

[6]  Canada also contends that during his term in strip cell status, the defendants denied him federally mandated due process protections and violated VDOC policies.  I must summarily dismiss these claims as well.  The short-term deprivation of property items during his strip cell period did not "impose[] atypical and significant hardship . . . in relation to the ordinary incidents of prison life" so as to trigger a constitutionally protected interest related to that status.  *Sandin v. Connor,* 515 U.S. 472, 484 (1995).  Moreover, state officials' failure to abide by state procedural regulations is not a federal due process issue, and is, therefore, not actionable under § 1983.  *Riccio v. Cty of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").

Canada's property bags while searching or cleaning the areas in and around his cell led to contamination of his property, he has not suffered a constitutional deprivation that triggered any federally required procedural protections.

Canada asserts that the officers purposely caused his property bags to be destroyed by claiming they had been contaminated by feces or by purposely placing them in a contaminated area. Because this conclusory allegation is unsupported by facts, I need not accept it as true. In any event, "an unauthorized *intentional* deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (emphasis added). The unauthorized acts that Canada alleges triggered his procedural due process rights only if he had no meaningful postdeprivation remedy for the loss. However, he did have such remedies. Canada possessed remedies under Virginia state law to seek recovery of his property or reimbursement for the value of his items. *See*, *e.g.*, Va. Code § 8.01-195.3 (Virginia Tort Claims Act). Thus, he cannot prevail in a constitutional claim for the alleged loss of his property items. *Hudson*, 468 U.S. at 535-36 (regarding the availability and adequacy of state court remedies under Virginia law for alleged destruction of property).

Finally, Canada has no § 1983 claim that the defendants violated VDOC policies. "[I]t is well settled that violations of state law cannot provide the basis for a due process claim" under § 1983. *Weller v. Dep't of Social Services*, 901 F.2d 387, 392 (4th Cir. 1990) (citation omitted). Accordingly, I will summarily dismiss Canada's claims regarding the deprivation of his property items.

### F. Excessive Fine Claim.

Canada's last claim, raised in his Supplemental Complaint, alleges that the restitution ordered was an excessive fine because the video did not show any feces on Bray's clothing items. This claim is frivolous.

First, Canada was not excessively fined.

> The Eighth Amendment, applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Excessive Fines Clause limits the government's "power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (internal quotations omitted). By its plain language, the Excessive Fines Clause of the Eighth Amendment is violated only if the disputed fees are both "fines" and "excessive." *See id.* "A punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.* at 324.

*Canada v. Ray*, No. 7:08CV00219, 2010 WL 2179062, at *2 (W.D. Va. May 28, 2010). Under these principles, the restitution imposed on Canada for destruction of state property was neither a fine, imposed as punishment, nor excessive in

-16-

proportion to his offense conduct and its consequences. Rather, the financial obligation imposed on Canada was narrowly tailored to reimburse the state for the items that the hearing officer found had been soiled because of Canada's actions.

Second, Canada cannot use the video footage to reverse or alter the disciplinary hearing outcome and restitution order on due process grounds. A prison disciplinary decision satisfies "the requirements of due process . . . if some evidence supports the decision. . . ." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 456 (1985). On the disciplinary report for February 9, 2016, Sargent Hall stated that he had "witnessed Offender Canada throw feces out the tray slot striking three officers and destroying three state issued shirts, three state issued pants, one pair of state issued strike force boots, and three state-issued utility belts." (Supp. Compl. Ex. 1, at 1, ECF No. 18-1.) Thus, the hearing officer's finding that Canada's feces had contaminated three officers' clothing items was supported by some evidence in the record, as *Hill* requires. Accordingly, I will summarily dismiss Canada's claim regarding the restitution order.

## G.

### Supervisory Liability Claim.

Canada seeks to draw supervisory officials into his lawsuit, but states no facts to support § 1983 claims against them. First, by merely failing to investigate

Canada's complaints to his satisfaction, the supervisory defendants did not contribute in any way to the alleged violations committed by their subordinates. *See Ashcroft*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Even assuming that prison policy required an investigation, state officers' violations of prison policies do not equate with constitutional violations, and thus are not actionable under § 1983. *Weller*, 901 F.2d at 392. In any event, for the reasons stated, Canada fails to allege facts stating a § 1983 claim against any of the defendants.

### III.

In conclusion, I must summarily dismiss Canada's Complaint as supplemented. *See* 28 U.S.C. § 1915A(b)(1). His factual allegations do not state claims actionable under § 1983 or are factually or legally frivolous.

A separate Order will be entered herewith.

DATED: October 18, 2016

/s/ James P. Jones
United States District Judge